1
2
3
4
5
6
7
8                          UNITED STATES DISTRICT COURT

9                     FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   GEORGE KEALOHA WONG,                        No.  2:16-cv-00501 AC P

12                 Petitioner,

13        v.                                     ORDER

14   FELICIA PONCE,

15                 Respondent.

16

17        Petitioner, a federal prisoner proceeding pro se, has filed a petition for a writ of habeas

18   corpus pursuant to 28 U.S.C. § 2241.  ECF No. 1.  Petitioner has also filed several supplements to

19   his petition and requests to expedite.  ECF Nos. 5, 9, 10.  The parties have consented to the

20   jurisdiction of the undersigned magistrate judge for all purposes pursuant to 28 U.S.C. § 636(c)

21   and Local Rule 305(a).  ECF Nos. 3, 7.

22        I.      Petition

23        Petitioner was convicted of possession with the intent to distribute methamphetamine in

24   violation of 21 U.S.C. § 841.  ECF No. 1 at 2.  Petitioner contends that he is entitled to relief

25   under 28 U.S.C. § 2241 because (1) the Federal Bureau of Prisons (BOP) violated 42 U.S.C. §

26   17541(a)(1)(G), the Second Chance Act (SCA), by failing to provide incentives to inmates

27   participating in skills development programs; (2) the BOP violated petitioner's due process rights

28   by failing to provide him an evaluation and team meeting for placement in a Residential Reentry

                                              1

Center (RRC); (3) the BOP improperly denied him RRC placement; and (4) the BOP retaliated against petitioner, thus violating his First Amendment rights, by ignoring his requests for case management assistance for reentry planning.  ECF No. 1 at 3; ECF No. 5 at 2-6.

II.      Discussion

Rule 4 of the Rules Governing Section 2254 Cases in the United States District Courts (Habeas Rules) requires the court to summarily dismiss a habeas petition "[i]f it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief in the district court."[1]

A.  Due Process Violations

1.  Factual Background

When petitioner was approximately twenty months from his projected release date, he submitted a request to his case manager for a twelve-month RRC placement.  ECF No. 9 at 7.  Petitioner was informed that he would be evaluated when he was seventeen to nineteen months out from his projected release date.  Id.  One month later, petitioner submitted another request to his case manager asking for a follow up on his request for a twelve-month RRC placement.  Id. at 5.  When he did not receive a response, petitioner submitted a request for informal resolution and was advised to see the previous response from his case manager (noting that he would be evaluated seventeen to nineteen months from his projected release date).  Id. at 7.  Petitioner then submitted a request for an administrative remedy, again requesting a twelve-month RRC placement and stating that he was nineteen months from his projected release date.  Id. at 8.  The request was rejected, advising petitioner that he would be evaluated soon.  Id.  Petitioner appealed the rejection of his administrative remedy request.  Id. at 9.  The appeal was rejected and petitioner was advised to follow the directions provided on his prior rejection.  Id. at 10.  Petitioner appealed to the Central Office and that appeal was also rejected.  Id. at 11.

Approximately five months after petitioner submitted his first request for a twelve-month RRC placement, he received a notification that he had been approved for up to six months at an

---

[1]  The Rules Governing Section 2254 Cases are appropriately applied to proceedings undertaken pursuant to 28 U.S.C. § 2241.  Habeas Rule 1(b).

1   RRC. Id. at 5. After receiving that notification, he filed a request for informal resolution seeking

2   reconsideration for a twelve-month placement (id. at 12) and a request for administrative remedy,

3   again requesting reconsideration (id. at 13). Both requests were denied and petitioner was

4   informed that his unit team had conducted an individual assessment and determined that a

5   placement of 151-180 days was sufficient for his RRC placement. Id. at 12-13. Petitioner then

6   filed a regional administrative remedy appeal, alleging that he did not have a program review in

7   December in accordance with 28 CFR § 524.11, that he did not receive case management

8   services, and that he did not receive incentives for participating in skills development programs.

9   ECF No. 9 at 14. Petitioner received a response stating that his concerns had already been

10  addressed in response to his previous request. Id.

11                    2.   Sections 3621 and 3624

12          There are two statutory provisions governing the BOP's authority to transfer inmates in its

13  custody to RRCs: 18 U.S.C. §§ 3621(b) and 3624(c). Section 3621 states "[t]he Bureau of

14  prisons shall designate the place of the prisoner's imprisonment." 18 U.S.C. § 3621(b). Section

15  3621 further lays out five factors that the BOP should consider when determining the appropriate

16  placement for an inmate, including the nature and circumstance of the offense and the history and

17  characteristics of the prisoner. 18 U.S.C. § 3621(b)(1)-(5). The BOP has the authority to place

18  inmates in an RRC during the final months of their term of imprisonment. 18 U.S.C.

19  § 3624(c)(1). Section 3624(c), amended in 2007 by the Second Chance Act, states that the BOP

20  should ensure, "to the extent practicable," that a prisoner "spends a portion of the final months of

21  [his] term (not to exceed 12 months), under conditions that will afford the prisoner a reasonable

22  opportunity to adjust to and prepare for the reentry of that prisoner into the community" and that

23  the conditions "may include a community correctional facility." Id. Section 3624(c) also

24  establishes that the Director of the BOP shall issue regulations to ensure placements in RRCs are

25  "conducted in a manner consistent with section 3621(b) of this title."[2] 18 U.S.C. § 3624(c)(6)(A).

26  ////

27  _____

28  [2] The BOP regulations for pre-release community confinement are codified at 28 C.F.R.
    §§570.20-.22.

1          3.  Right to an RRC Placement

2          To the extent that petitioner claims a constitutional right to be housed in a particular place,

3    such as an RRC, that claim is without merit.  Moody v. Daggett, 429 U.S. 78, 88 n.9 (1976)

4    (noting that "there is no legitimate statutory or constitutional entitlement [to prisoner

5    classification or eligibility for rehabilitative programs] sufficient to invoke due process"); see also

6    Meachum v. Fano, 427 U.S. 215, 224 (1976) (no constitutional right to be housed at a particular

7    prison).  The courts have consistently held that the Second Chance Act does not guarantee a

8    placement for an inmate, but "only directs the Bureau of Prisons to consider placing an inmate in

9    a RRC for up to the final twelve months of his or her sentence." Lovett v. Hogsten, No. 09-5605,

10   2009 WL 5851205, at *2, 2009 U.S. Dist. LEXIS 28957, at *4 (6th Cir. Dec. 29, 2009); Smith v.

11   Sanders, No. CV 09-3083-GHK E, 2009 WL 2900317, at *6 (report and recommendation and

12   order adopting in full), 2009 U.S. Dist. LEXIS 82265, at *18 (report and recommendation, order

13   adopting in full at 2009 U.S. Dist. LEXIS 82261) (C.D. Cal. Sept. 3, 2009) (holding that the BOP

14   retains discretionary authority over the duration of RRC placement); Stockton v. Adler, No. 1:08-

15   CV-01594 OWW GSA HC, 2008 WL 5136133, at *3, 2008 U.S. Dist. LEXIS 101986, at *8

16   (E.D. Cal. Dec. 8, 2008) (noting that there is no statutory or constitutional right to an immediate

17   RRC assessment or transfer); Creager v. Chapman, No. 4:09-CV-713-A, 2010 WL 1062610, at

18   *3, 2010 U.S. Dist. LEXIS 26843, at *7 (N.D. Tex. Mar. 22, 2010) (finding that "nothing in the

19   Second Chance Act or § 3621(b) entitles [petitioner] or any other prisoner to any guaranteed

20   placement in a residential reentry center").  Petitioner's disagreement with the BOP's

21   recommendation not to transfer him to an RRC until his final six months, rather than for the

22   twelve-month period he requested, does not establish a constitutional violation.  Since petitioner

23   has no constitutional right to placement in an RRC, there is no due process violation.

24          4.  Program Statement Violations

25               i.  Right to Incentives

26          Petitioner asserts that the BOP failed to comply with the Second Chance Act, 42 U.S.C. §

27   17541, because it failed to provide incentives for inmates participating in skill development

28   programs (ECF No. 1 at 3) and that such "[i]ncentives could include the maximum allowable

4

1   period in a community correction center" (ECF No. 5 at 2).  He further alleges that the BOP

2   failed to follow their own program statement, P5330.11(2.4.8.)(b), which states that the Warden is

3   strongly encouraged to approve placement in an RRC for the maximum period of time for

4   inmates who successfully complete the non-residential drug abuse program. Id. at 3.  He states

5   that he actively participated in all programs offered at the prison and the BOP must provide

6   incentives for such participation, such as placement in an RRC for the maximum allowable

7   period. Id. at 2.

8        "[T]he Second Chance Act does not mandate that the [BOP] designate those prisoners

9   who participate in skills development programs for the full twelve months of RRC placement as

10  an incentive for such participation."  Arnett v. Washington-Adduci, No. CV 11-5898-JAK(E),

11  2011 WL 6951848, at *8, 2011 U.S. Dist. LEXIS 151387, at *29 (C.D. Cal. Nov. 15, 2011)

12  (citing 42 U.S.C. § 17541(a)(2)(A) and collecting cases); Richardson v. Dir. for Fed. Bureau of

13  Prisons, 434 F. App'x 121, 122 (3d Cir. 2011) (holding that the Second Chance Act does not

14  require that any particular incentives be given for prisoner participation in skills development

15  programs).  While the Second Chance act requires the BOP to establish incentives, it does not

16  require that any particular incentive be established.  See 42 U.S.C. § 17541(a)(1)(G) and (2).  The

17  BOP's program statement also does not entitle petitioner to maximum RRC placement.  Petitioner

18  alleges that under the program statement the Warden is "strongly encouraged," not mandated, to

19  approve inmates such as himself for twelve-month RRC placements.  ECF No. 5 at 3.

20       Because maximum RCC placement as an incentive is discretionary under the Second

21  Chance Act, allegations that petitioner was improperly denied such placement as an incentive or

22  that the BOP violated the Second Chance Act by not requiring such an incentive, do not state a

23  claim upon which relief may be granted.  Gutierrez-Chavez v. I.N.S., 298 F.3d 824, 827 (9th Cir.

24  2002), amended, 337 F.3d 1023 (9th Cir. 2003) (noting that habeas relief is not available to

25  challenge purely discretionary decisions).  Moreover, even if the program statement mandated

26  twelve-month placement in an RRC under specified circumstances, failure to comply would not

27  warrant habeas relief.  Reeb v. Thomas, 636 F.3d 1224, 1227 (9th Cir. 2011) (holding that "[a]

28  habeas claim cannot be sustained based solely upon the BOP's purported violation of its own

1    program statement because noncompliance with a BOP program statement is not a violation of

2    federal law").

3                        ii.   Right to a Timely Individual Assessment for RRC Placement

4              Petitioner also alleges that his due process rights were violated because he was not

5    provided an evaluation for RRC placement seventeen to nineteen months prior to his projected

6    release date.  ECF No. 1 at 3; ECF No. 5 at 3.  He states that a memorandum issued by the BOP

7    on April 14, 2008, "provides that the BOP must review inmates for pre-release placements 17 to

8    19 months before their projected release dates."  ECF No. 5 at 3.

9              Petitioner does not allege that he was not provided an individual assessment.  Instead, he

10   asserts that the assessment he received was not timely and that it did not comply with procedural

11   requirements.  ECF No. 1 at 3; ECF No. 5 at 3-4.  Specifically, petitioner alleges that an

12   individual RRC assessment did not take place on December 15, 2015, which would have been

13   approximately seventeen months before his projected release date, because he was not evaluated

14   in person and did not speak with BOP staff regarding the assessment.  ECF No. 5 at 5; ECF No. 9

15   at 3.  He asserts that the evaluation did not take place until two months later on February 10,

16   2016.  ECF No. 5 at 4.

17             Even if the BOP failed to conduct the assessment within the timeframe specified in its

18   program statement, this would not violate due process.  Like the program statement above, the

19   BOP memorandum is not a federal law and therefore petitioner has no constitutional right to an

20   individual RRC assessment seventeen to nineteen months prior to his projected release date.

21   Moreover, if the court accepts as true that the assessment did not take place until February 10,

22   2016, it was still conducted approximately fifteen months before petitioner's projected release

23   date.  ECF No. 9 at 21.  This means it was conducted sufficiently in advance that petitioner was

24   capable of being considered for a twelve-month placement.

25             Since petitioner was provided with an individual assessment in sufficient time to allow for

26   a twelve-month placement had it been deemed appropriate and BOP memoranda are not federal

27   law, petitioner's claim that the BOP violated his due process rights by failing to provide a timely

28   RRC assessment must be denied.

1        iii.   <u>Right to a Team Meeting</u>

2        Petitioner claims that his program reviews were not properly conducted because he was

3 not provided with forty-eight hours' notice before reviews, reviews were conducted only by the

4 case manager, and he did not have the opportunity to discuss decisions such as RRC placement,

5 all in violation of 28 C.F.R. § 524.11.  ECF No. 5 at 5.  The failure to comply with these

6 procedural requirements appears to be the basis of petitioner's claim that an individual assessment

7 did not take place on December 15, 2015.  <u>Id.</u> at 6.

8        Petitioner alleges that the failure to convene a classification team meeting to discuss an

9 RRC placement as part of his program review violated his due process rights.  ECF No. 1 at 3;

10 ECF No. 5 at 3, 5.  Petitioner notes that after his request for administrative remedy seeking a

11 twelve-month RRC placement was rejected, he filed a request to the Camp Administrator

12 requesting a team meeting to discuss an RRC placement, but the meeting was not provided.  ECF

13 No. 5 at 3.  Notably, the BOP classification and program review is distinguishable from

14 individual assessments.  According to 28 C.F.R. § 524.11, inmates shall be provided with a

15 program review at least once every 180 calendar days and the inmates must be notified at least

16 forty-eight hours in advance.  28 C.F.R. § 524.11(a)(2), (b)(1).  The regulation also provides that

17 the inmate is expected to attend all program reviews.  28 C.F.R. § 524.11(b)(3).  However, these

18 regulations only apply to program reviews and not to individual assessments for RRC placement,

19 which are controlled by 18 U.S.C. § 3621(b).  Furthermore, the memorandum that petitioner

20 submits from the Assistant Director of the Correctional Programs Division regarding RRC

21 placements states only that individual assessments occur *as part of* the inmate program review

22 process.  ECF No. 9 at 15.  Nothing in the memorandum or the regulation requires that the inmate

23 be present at the individual assessment, nor do they require that the individual assessment occur

24 during the program review meeting itself.  The criteria that must be considered for the individual

25 assessment also do not require petitioner's presence or input.  <u>See</u> 18 U.S.C. § 3621(b).  Thus,

26 even if petitioner's program reviews were not properly conducted, this failure would not support

27 petitioner's challenge to the RRC assessment because the program review did not determine

28 whether petitioner was eligible for an RRC placement.  Instead, the RRC placement

1   determination was made during the individual assessment, which petitioner was not statutorily or

2   constitutionally required or entitled to attend.

3            Nothing in the BOP program statements excerpts and memorandum provided by petitioner

4   or the Code of Federal Regulations requires the BOP to provide inmates with a team meeting

5   upon request or to conduct in-person individual assessments.  Instead, the regulations establish

6   procedures for conducting program reviews, while the BOP program statements and

7   memorandum provide guidance regarding conducting individual RRC assessments.  The failure

8   to follow regulations that govern a separate process does not violate petitioner's rights as to an

9   individual assessment under 18 U.S.C. § 3621(b).  Moreover, even if the BOP program

10   statements required an in-person individual assessment, they are not federal law and therefore

11   failure to follow them does not violate federal law.  Accordingly, the alleged failure to provide a

12   team meeting or in-person individual assessment did not violate petitioner's due process rights.

13            B.  Judicial Review of BOP Decisions

14            Petitioner's claim that he was improperly denied a twelve-month RRC placement also

15   fails.  The courts have uniformly found that habeas review of RRC placement determinations by

16   the BOP is not permitted.  Reeb, 636 F.3d at 1227-28 (finding that permitting prisoners to

17   challenge the BOP's discretionary determinations would be inconsistent with 18 U.S.C. § 3625);

18   Geiger v. Adler, No. 1:10-cv-00715-AWI-JLT HC, 2011 WL 5417093, at *6, 2011 U.S. Dist.

19   LEXIS 129453, at *18 (E.D. Cal. Nov. 8, 2011) (collecting cases) (noting that the BOP has the

20   sole authority to make RRC placement determinations, which are not reviewable in the district

21   court pursuant to § 706(2)(A) of the Administrative Procedures Act); English v. Ives, No. 2:11-

22   cv-0010 EFB P, 2012 WL 4038495, at *6, 2012 U.S. Dist. LEXIS 130293, at *16-17 (E.D. Cal.

23   Sept. 12, 2012) (same); Khachatryan v. Milusnic, No. CV 13-2892-JSL (MAN), 2013 WL

24   2251724, at *2, 2013 U.S. Dist. LEXIS 72727, at *4 (C.D. Cal. May 22, 2013) (finding that the

25   court "may not second guess the BOP's individualized determination"); Arred v. Phillips, 2008

26   WL 4219074, at *3 & n.2, (N.D.W.Va. Sept. 15, 2008) (stating that the court lacks authority to

27   order the BOP to afford a longer placement in community corrections once a decision is made).

28   This court does not have the ability to review the BOP's discretionary recommendation to place

1    petitioner in an RRC for a six-month period, rather than the maximum twelve-month period

2    petitioner requested.

3         C.   Retaliation Claim

4         "Within the prison context, a viable claim of First Amendment retaliation entails five

5    basic elements:  (1) An assertion that a state actor took some adverse action against an inmate (2)

6    because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's

7    exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate

8    correctional goal."  Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005).

9         Petitioner alleges that his case manager retaliated against him by ignoring his requests for

10   assistance with reentry planning and by subsequently damaging his property because petitioner

11   filed a grievance against him.  ECF No. 1 at 3; ECF No. 5 at 2.  Additionally, petitioner alleges

12   that other BOP personnel retaliated against him by ignoring his requests for relief regarding case

13   management services, ignoring his requests for a transfer to an RRC placement, and failing to

14   communicate with him regarding his RRC assessment.  Id.  He appears to claim that the failure to

15   respond to his requests for assistance contributed to the denial of a maximum RRC placement.

16   The documentation petitioner submits in support of his claim indicates that petitioner submitted a

17   request for informal resolution stating that he was dissatisfied with his team meeting because he

18   was not provided the opportunity to communicate directly with staff who make program review

19   decisions.  ECF No. 9 at 19.  Petitioner received a response indicating that his claims were

20   unfounded, noting that petitioner voluntarily signed for his program review.  Id. at 19.  Petitioner

21   continued to file grievances and appeals at multiple levels and he received responses to all of

22   them.  Id. at 20, 21, 27-32.

23        Petitioner fails to state a cognizable retaliation claim because his allegations do not

24   support an inference that the case manager retaliated against him or that the BOP's motivation in

25   denying his requests for administrative remedies was retaliatory.  Petitioner's conclusory

26   allegations of retaliation are not sufficient.  Even if his case manager was ignoring his requests for

27   services, simply ignoring his requests is an insufficient basis for a First Amendment retaliation

28   claim because petitioner has not identified any protected conduct that caused the case manager's

9

1    allegedly retaliatory conduct.  Petitioner's other retaliation claims against the case manager allege

2    that petitioner's property was damaged in retaliation for filing a grievance.  Assuming that the

3    case manager's search of petitioner's cell and the resulting property damage were motivated by a

4    desire to retaliate against petitioner for filing a grievance, these claims are not properly before the

5    court in habeas.

6         As for the allegations regarding the individuals responding to his grievances, there is also

7    no evidence to support an inference that the rejections of petitioner's grievances and appeals by

8    other BOP officials were retaliatory.  Contrary to petitioner's allegations, his requests for

9    administrative remedies were not ignored and he was provided with information for addressing

10   his concerns, such as filing a tort claim regarding his damaged property (ECF No. 9 at 30) and

11   submitting a request to his unit team for an RRC evaluation (ECF No. 9 at 32).  Petitioner has

12   failed to show that the retaliatory motive was a "substantial" or "motivating" factor behind the

13   BOP's conduct.  Brodheim v. Cry, 584 F.3d 1262, 1271 (9th Cir. 2009) (quoting Soranno's

14   Gasco, Inc v. Morgan, 874 F.2d 1310, 1314 (9th Cir. 1989)).

15        Even if petitioner had alleged sufficient facts to support an inference of retaliation, he has

16   not demonstrated that either the case manager or the BOP's conduct was enough to chill his First

17   Amendment rights.  Not every allegedly adverse action is sufficient to support a claim for

18   retaliation.  Watison v. Carter, 668 F.3d 1108, 1114 (9th Cir. 2012) (harm must be "more than

19   minimal" (quoting Rhodes, 408 F.3d at 568, n.11)); see also Bell v. Johnson, 308 F.3d 594, 603

20   (6th Cir. 2002) ("[S]ome adverse actions are so de minimis that they do not give rise to

21   constitutionally cognizable injuries." (citing Thaddeus-X v. Blatter, 175 F.3d 378, 396 (6th Cir.

22   1999))).  It is clear from the documentation petitioner provided and petitioner's filing of the

23   petition in the instant action that the case manager's alleged disregard of his requests and the

24   BOP's denials of his grievances has not prevented him from further pursuing First Amendment

25   activities.  In fact, petitioner continued to use the administrative appeal process to voice his

26   grievances regarding his case manager's inaction, the BOP's alleged uncooperativeness, and his

27   desire for a twelve-month RRC placement.  Not only was petitioner not deterred, but an inmate of

28   ordinary firmness would not be deterred by the denial of grievances from continuing to engage in

protected conduct.  See Burgos v. Canino, 641 F. Supp. 2d 443, 455 (E.D. Pa. 2009) ("The mere denial of grievances does not rise to the level of adverse action sufficient to deter a person of ordinary firmness from exercising his constitutional rights."); Dicey v. Hanks, No. 2:14-cv-2018 JAM AC P, 2015 WL 4879627, at *5, 2015 U.S. Dist. LEXIS 107487, at *11-12 (Aug. 14, 2015, adopted in full Oct. 15, 2015[3]) (collecting cases) ("[D]enial of a grievance neither constitutes an adverse action that is more than de minimis nor is it sufficient to deter a prisoner of "ordinary firmness" from further First Amendment activities.).

In sum, petitioner's retaliation claim fails because (1) his allegations do not support an inference of retaliatory intent, and (2) even if there was such intent, the denial of a grievance is insufficient to constitute an adverse action as a basis for a retaliation claim.

III.    Summary

The BOP has the sole authority to decide the appropriate placement for inmates pursuant to 18 U.S.C. § 3621(b).  The court cannot review the BOP's decision that petitioner should only spend six months in an RRC, because judicial review of this decision is not allowed by 18 U.S.C. § 3625.  Additionally, the BOP is not required to provide maximum RRC placement to prisoners who participate in skills development programs, and the failure to follow BOP program statements and memorandum does not establish a violation of federal law.  Since petitioner has no constitutional or statutory right to a particular placement, a timely individual assessment, a team meeting upon request, or any particular incentives, the due process claims must be denied.

With regard to the retaliation claim, petitioner has failed to allege facts that show that either the case manager's actions or the BOP's actions were based on retaliatory motivation. Moreover, petitioner was not prevented from continuing to express his grievances because the denial of grievances would not stop an inmate of ordinary firmness.  Since petitioner has failed to state a cognizable claim for retaliation, this claim must also be denied.

////

////

---

[3]  2015 WL 6163444, 2015 U.S. Dist. LEXIS 140655.

1    In accordance with the above, IT IS HEREBY ORDERED that:

2       1.  Petitioner's motion to expedite (ECF No. 10) is granted to the extent this order

3    addresses the pending petition for writ of habeas corpus.

4       2.  The petition for writ of habeas corpus (ECF No. 1) is denied.

5    DATED: March 1, 2017

6                                      _____

7                                      ALLISON CLAIRE
                                       UNITED STATES MAGISTRATE JUDGE

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28